# United States Court of Appeals for the Federal Circuit

---

**SCOTT CLARE, NEIL LONG, INNOVATIVE TRUCK STORAGE, INC.,**
*Plaintiffs-Appellants*

**v.**

**CHRYSLER GROUP LLC,**
*Defendant-Appellee*

---

2015-1199

---

Appeal from the United States District Court for the Eastern District of Michigan in No. 2:13-cv-11225-NGE-DRG, Judge Nancy G. Edmunds.

---

Decided: March 31, 2016

---

JONATHAN TAD SUDER, Friedman, Suder & Cooke, Fort Worth, TX, argued for plaintiffs-appellants. Also represented by JAYE QUADROZZI, RODGER D. YOUNG, Young & Associates, Farmington Hills, MI.

FRANK C. CIMINO, JR., Venable LLP, Washington, DC, argued for defendant-appellee. Also represented by JONATHAN L. FALKLER, LESLIE A. LEE, MEGAN S. WOODWORTH.

---

Before PROST, *Chief Judge,* MOORE and WALLACH, *Circuit Judges.*

MOORE, *Circuit Judge.*

Scott Clare, Neil Long, and Innovative Truck Storage, Inc. (collectively, Clare), accused Chrysler Group LLC of infringing claims of U.S. Patent Nos. 6,499,795 and 7,104,583 by importing, making, using, selling, and offering to sell Dodge Ram pickup trucks equipped with the Dodge RamBox Cargo Maintenance System. We *affirm* the district court's grant of summary judgment of non-infringement.

BACKGROUND

The '795 and '583 patents are directed to a hidden storage compartment in the side of the bed of a pickup truck. The specifications of the patents, which are identical in relevant part, describe conventional methods for altering the bed of a pickup truck to add storage space, but these methods "alter the bed's external appearance" to give the pickup truck the "appearance of a utility bed" with visible storage panels, handles, and locks. '795 patent col. 1 ll. 20–40. The resulting modifications make the pickup truck storage "an attraction for theft." *Id.*

The '795 and '583 patents improve on the prior art by adding storage to the bed of a pickup truck "without altering the external appearance of the bed and without significant reduction in the carrying capacity" of the bed. *Id.* col. 1 ll. 41–44. In order to add storage space without significantly reducing storage capacity, the storage area is placed in the side of the bed "adjacent [to] the wheel well area, and along the length of the bed." *Id.* col. 1 ll. 45–50. The external side panel of the truck is used to access the storage area. *Id.* The only visible modifications to the external side panel are two vertical lines where the side panel is cut. *Id.* col. 4 ll. 41–46. The hinge is placed out-of-sight on the inside of the side panel, and the latch and

lock are placed out-of-sight on the interior side of the bed. *Id.* col. 4 ll. 46–49, col. 5 ll. 7–9. After the modifications are made, "one would not readily recognize the modification to the bed, and therefore those with intent to steal tools, etc. would not recognize the hidden storage arrangement." *Id.* col. 4 ll. 49–52.

At issue on appeal are claim limitations characterized by the district court and the parties as the "external appearance limitations." *See, e.g., id.* col. 8 ll. 39–41 ("the hinged portion is constructed such that the truck has an external appearance of a conventional pickup truck"); '583 patent col. 6. ll. 6–8 ("the bed being constructed such that the pickup has substantially the external appearance of a pickup without the built-in storage"). The district court gave these limitations the same construction, as "the hinged portion is constructed such that the storage box is not obvious from the outward appearance of the pickup." *Clare v. Chrysler Grp., LLC*, No. 13-11225, 2014 WL 2514563, at *11 (E.D. Mich. June 4, 2014).

Chrysler moved for summary judgment of non-infringement of the claims containing the external appearance limitations: claims 21 and 46 of the '795 patent, and claims 33, 34, 37, 41, 43, 44, 46-48, 53, 56, and 57 of the '583 patent.[1] The district court granted Chrysler's motion, holding that no reasonable juror could find that the RamBox, with its numerous and obvious visible distinctions of the external hinged panel, is not obvious from the outward appearance of the pickup truck. *Clare v. Chrysler Grp. LLC*, No. 13-11225, 2014 WL 6886292, at *4 (E.D. Mich. Dec. 4, 2014) ("The metallic lock of the

---

[1] The district court granted Chrysler's motion for summary judgment of invalidity on the remaining asserted claims, holding that those claims failed the written description requirement of 35 U.S.C. § 112. The invalidated claims are not on appeal.

RamBox is plainly visible.  It is positioned in an open portion at the center of the RamBox storage lid and the metallic color of the lock contrasts with the surrounding color of the pickup's side panel.  The seams created between the storage lid and the side panel are also visible.  They are located in an outward-facing area above waist height.  Finally, the top rail of the RamBox is stamped 'RAMBOX' in large lettering.").  The district court also held that no reasonable jury could find that the RamBox satisfied the external appearance limitations under the doctrine of equivalents.[2]

Clare appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Determining literal infringement is a two-step process:  the "proper construction of the asserted claim and a determination whether the claim as properly construed reads on the accused product or method." *Georgia-Pac. Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1330 (Fed. Cir. 1999).  "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specification[], along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction de novo." *Teva Pharm. USA Inc. v. Sandoz, Inc.*, ___ U.S. ___, 135 S. Ct. 831, 841 (2015) (italics omitted).  Because the only claim construction evidence at issue on appeal and presented to the district court is

---

[2]  On appeal, Clare does not dispute the district court's findings on the doctrine of equivalents.  Clare only asks that we remand the doctrine of equivalents issue to the district court if we find it was based on a flawed claim construction of the external appearance limitations.

intrinsic, our review is de novo. *See Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1023 (Fed. Cir. 2015).

We review the grant of summary judgment of non-infringement under the law of the relevant regional circuit. The Sixth Circuit reviews grants of summary judgment de novo. *Moore v. Holbrook*, 2 F.3d 697, 698 (6th Cir. 1993). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## I. Claim Construction

The district court construed the external appearance limitations to mean "the hinged portion is constructed such that the storage box is not obvious from the outward appearance of the pickup." *Clare*, 2014 WL 2514563, at *11. Clare argues that the district court erred in construing the limitations and erred in giving the different limitations the same construction. Clare asserts that the district court's construction improperly removes the "conventional pickup truck" frame-of-reference from the claims, improperly imports the theft-deterrent purpose of the invention into the claims, and conflicts with the patentee's express definition of the limitations in the prosecution history. Clare asks that we vacate the district court's construction, and hold that the external appearance limitations do not need a construction because the limitations are readily apparent to a lay person. We conclude that the district court properly construed these limitations.

The external appearance limitations appear in asserted dependent claims 21 and 46 of the '795 patent, and in independent claims 1, 22, and 45 of the '583 patent, from which the asserted claims of that patent depend. Claim

46 of the '795 patent and claim 1 of the '583 patent are representative of the asserted claims for the purpose of the disputes on appeal. Claim 46 of the '795 patent requires, in relevant part,

> A pickup truck having: a cab; a bed with two side panels connected to the cab and mounted on a frame . . . the improvement comprising: a storage compartment mounted within the bed and adjacent to one of the wheel wells; and at least a portion of one of the side panels is hinged to provide access to at least a portion of the storage compartment wherein the side panels terminate adjacent to the frame . . . wherein *the hinged portion is constructed such that the truck has an external appearance of a conventional pickup truck.*

'795 patent col. 8 ll. 10–20, col. 8 ll. 39–41 (emphasis added). Claim 1 the '583 patent requires, in relevant part,

> A pickup truck comprising . . . a bed; the bed comprising: two opposed side panels which are contoured and generally in line with the contoured sides of the forward area of the pickup truck . . . a hinged panel providing access to the storage compartment, *the bed being constructed such that the pickup has substantially the external appearance of a pickup without the built-in storage.*

'583 patent col. 5 l. 55–col. 6 l. 8 (emphasis added).

The language of the claims determines what the patentee regards as the invention and defines what the patentee is entitled to exclude. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Both sets of claims require that the inventive modifications to a conventional pickup truck are not obvious from the outward appearance of the pickup truck. Claim 46 of the '795 patent, for example, requires that the side panel of

the bed be modified with a hinged portion that provides access to a storage compartment, in a way that does not alter the external appearance of the truck. Similarly, claim 1 of the '583 patent requires that the bed of the pickup truck, which comprises a hinged panel that provides access to the storage compartment, be modified in a way that does not substantially alter the external appearance of the truck.

The specifications likewise support this construction of the external appearance limitations. *See* '795 patent, Abstract ("A pickup truck conversion . . . involves a storage/utility system in any fleet side pickup truck bed without substantially altering the bed's external appearance. . . . Since the storage system does not substantially alter the truck's external appearance, it reduces the attraction for theft."). Adding external storage compartments to a pickup truck was not a new idea at the time of the invention, as the specifications reference two such pre-existing systems. *Id.* col. 1 ll. 18–30. The "need [that] has been filled" by the invention is for external storage that is not obviously apparent as storage so that it does attract theft. *Id.* col. 1 ll. 31–33 ("While these prior storage/utility arrangements have been satisfactory for their intended purpose, such are an attraction for theft . . . ."), col. 1 ll. 34–39 ("Thus, there has been a need for a storage/utility system for pickup truck beds which does not alter the bed's external appearance . . . thereby reducing the tool theft problem"), col. 1 ll. 41–45 ("This need has been filled by the present invention which involves the conversion of a conventional pickup truck bed into a storage/utility bed without altering the external appearance of the bed . . . ."), col. 1 ll. 50–54 ("Thus, the pickup can be used for pleasure or work without the appearance of its storage/utility capability, and can be parked in areas where theft would likely occur from conventional tool boxes or utility."), col. 2 ll. 5–8 ("Another object of the invention is to reduce theft potential from a storage/utility

bed of pickup trucks, etc. by providing hidden storage utility areas in the bed without altering the external appearance of the bed.").

The specifications describe how the invention accomplishes the "conversion of a conventional pickup truck bed to a storage/utility bed without altering the external appearance of the bed" to "reduce[] the theft potential from storage/utility beds by eliminating the appearance of such beds." *Id.* col. 3 l. 66–col. 4 l. 6. The storage is added to a conventional pickup truck by cutting the external side panel of the truck bed vertically in two places, cutting along the upper length on the inner surface of the side panel, and disconnecting the lower length from the frame. *Id.* col. 4 ll. 24–34. The side panel is then reattached to the truck bed by attaching an internal hinge to the side panel along the upper length, installing an internal latch along the lower length, and painting the cut areas and the internal area to correspond to the color of the bed. *Id.* col. 4 ll. 34–41. "Upon completion of the conversion, from a side view, the only difference between the converted bed and a nonconverted bed are two vertical lines or small spaces, one just back of the front of the bed and one just forward of the taillight section of the bed, where the side panel is cut, as illustrated in FIG. 1." *Id.* col. 4 ll. 41–46.

The specifications contain a primary embodiment,[3] illustrated by the figures in the patent, that closely tracks

---

[3]    The specifications also provide an example where the side panel is cut "along a desired lower portion . . . to eliminate the need for raising the entire side panel." '795 patent col. 5 ll. 44–50. This horizontal cut, marked as number 34 in figure 1, appears as an extension of the horizontal line in the cab of the truck and is therefore consistent with the specifications' requirement that the

the description of the invention.   Figures 1 and 2 are reproduced below.



FIG.1

---

modifications do not "alter[] the external appearance of the bed." *Id.* col. 1 ll. 41–45



**FIG. 2**

Referring to figure 1, which is described as a "conventionally appearing pickup truck," the specifications state that the pickup truck "has been modified in accordance with the present invention, with the only indication of such modification being the cuts, small spaces, or lines 20 and 21 in the side panels 15, as shown in FIG. 1, with the side panel being closed." '795 patent col. 4 ll. 53–64. The other features of the storage area are not visible: the portion of the storage areas, marked with numbers 22 and 23 in figure 2, above and to the side of the rear wheels does "not extend to the top or upper surface" of the bed; the latch mechanism and key lock, marked with numbers 25 and 26 in figure 2, are "mounted in the rear of each of the boxes," which are hidden in a back portion of the truck bed as shown in figure 2; and the hinges are located on the interior of the storage compartment, as shown in figure 3, such that they are "not visible from the exterior." *Id.* col. 4 l. 66–col. 5 l. 9, col. 5 ll. 23–25. Accordingly, the

district court's construction of the external appearance limitations is well-supported by the intrinsic record.

Clare first argues that the district court should not have construed the external appearance limitations because the words "external" and "appearance" are readily apparent to a layperson. We disagree. Although those words may be readily apparent to a lay person there existed a fundamental dispute regarding the scope of those limitations. *See O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). Clare argued to the district court that the scope of the external appearance limitations should focus on the visibility of the internal storage box structure, not the external hinged panel. According to Clare, even a fluorescent orange external panel on a white pickup truck stamped with large black letters saying STORAGE would meet the limitations so long as the inside of the storage box itself could not be seen from the outside of the pickup truck. Chrysler, on the other hand, argued that the scope of the external appearance limitations should take into account the external hinged panel used to access the storage area. The district court correctly resolved this dispute by construing the external appearance limitations as directed to the outward appearance of the pickup truck, which takes into account the outward-appearing hinged panel.

Clare next argues that the external appearance limitations contain two distinct sets of limitations that should be construed separately; the '795 claims require that the inventive pickup truck "has an external appearance of a conventional pickup truck" and the '583 claims require that the inventive pickup truck "has *substantially* the external appearance of a pickup without the built-in

storage." Clare does not propose an alternative construction for either set of limitations, but the ordinary meaning of "substantially" has often been recognized to mean "largely but not wholly that which is specified." *See, e.g., Aventis Pharm. Inc. v. Amino Chems. Ltd.,* 715 F.3d 1363, 1377 (Fed. Cir. 2013). Although the doctrine of claim differentiation is not as strong across related patents as it would be if the different claim limitations appeared in the same patent, applying the doctrine here indicates that the '795 claims at issue require the inventive pickup truck to appear *identical* to a conventional pickup truck. Such a construction, however, is problematic because the '795 specification is clear that the inventive pickup truck is not identical to a conventional pickup truck—vertical cut lines are visible from an external appearance. '795 patent col. 4 ll. 41–46 ("Upon completion of the conversion, from a side view, the only difference between the converted bed and a nonconverted bed are two vertical lines or small spaces, one just back of the front of the bed and one just forward of the taillight section of the bed, where the side panel is cut, as illustrated in FIG. 1."), col. 4 ll. 59–64 ("[T]he bed 12 of FIGS. 1 and 2 has been modified in accordance with the present invention, with the only indication of such modification being the cuts, small spaces, or lines 20 and 21 in the side panels 15, as shown in FIG. 1, with the side panel being closed."), col. 5 ll. 33–37 ("While the invention has been described with respect to a pickup bed, it can be readily incorporated into trailer or full-sized truck beds having side panels without detracting from the appearance of the side panels, except for the two vertical cuts therein."). Although the specification describes these vertical cut lines as being visible, the specification also states that these visible cut lines do not alter the appearance of the conventional pickup truck. *Id.* col. 1 ll. 13–17 ("The present invention relates to . . . a storage/utility conversion . . . in a conventional pickup bed *without altering the external appearance* of the bed.") (emphasis added), col. 1 ll. 41–45 ("This need has been

filled by the present invention which involves the conversion of a conventional pickup truck bed into a storage/utility bed *without altering the external appearance* of the bed . . . .") (emphasis added), col. 2 ll. 5–8 ("Another object of the invention is to reduce theft potential from a storage/utility bed of pickup trucks, etc. by providing hidden storage utility areas in the bed *without altering the external appearance* of the bed.") (emphasis added), col. 2 ll. 44–52 ("[T]he storage system is formed by a pair of vertical cuts in the overall side panel of the bed adjacent ends of the overall side panel, and is constructed such that when the side panel is lowered the storage box is hidden and *the appearance of the bed is not altered.*") (emphasis added), col. 5 ll. 26–31 ("It has thus been shown that the present invention provides a hidden storage/utility arrangement that can be initially built into a pickup truck bed, or a conventional bed can be converted to include the storage/utility arrangement *without altering the external appearance of the bed.*") (emphasis added). In view of the specification, there is no way to read the '795 claims at issue as requiring the inventive pickup truck to appear identical to a conventional pickup truck. The specifications expressly and repeatedly state that the vertical cut lines which are undisputedly visible nonetheless do not alter the external appearance of the truck. Thus, the district court did not err in concluding that the external appearance limitations are all properly construed as requiring a storage box that is not obvious from the outward appearance. Differentiating between the two sets of claim limitations would also result in the '795 claims excluding the specification's description of the invention and the preferred embodiment. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (holding that an interpretation that excludes a preferred embodiment "is rarely, if ever, correct"). We therefore agree with the district court that the limitations without the "substantially" modifier do not require that the inventive pickup truck appear identical to a conven-

tional pickup truck, and that a person of ordinary skill in the art would understand that the two sets of limitations have the same meaning.

Turning to the district court's construction of the external appearance limitations, Clare argues that the construction improperly imports the patent's purpose—the deterrence of theft—into the claims. *See E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003) ("The court's task is not to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention. Rather, the district court's function is to interpret claims according to their plain language unless the patentee has chosen to be his own lexicographer in the specification or has clearly disclaimed coverage during prosecution."). The district court did not import any theft-deterrent requirement into the claims. Instead, the district court properly determined that the claimed "external appearance" of the inventive truck must not have an obvious storage box. The specifications teach that the inventor's purpose for making the storage box not obviously apparent was to deter theft, but the non-obvious appearance of the storage box is required of the claimed truck whether or not it deters theft.

Finally, Clare argues that the district court's construction conflicts with the patentee's express definition in the prosecution history. Specifically, during the prosecution of the application that became the '795 patent, the examiner rejected a number of claims with the "external appearance" limitation as indefinite. According to the examiner, these claims require that the inventive pickup truck "has an external appearance of a conventional pickup truck," but the cut lines make the inventive pickup truck visibly distinct from a conventional pickup truck. J.A. 4573–74. In response, the patentee defined "appearance" as an "outward aspect," based on *Webster's Collegiate Dictionary*, Tenth Edition, and argued that the

examiner erred in determining that "appearance" requires a "visibly indistinct look." J.A. 4606–07. The patentee then stated that "the ordinary interpretation of the [external appearance limitations is] that the outward aspects of the inventive pickup truck are like the outward aspects of a pickup truck that does not have a storage box." J.A. 4606. The patentee went on to cite excerpts from the specification in support of his assertion that "the word 'appearance' as used in the specification contemplates some visible distinctions such as, for example, hinges, latches, vertical cuts, etc." J.A. 4607. The examiner, in the Notice of Allowance, allowed the claims because the patentee's remarks concerning the external appearance limitations are "deemed to define" over the indefiniteness rejection. J.A. 4644. Clare concludes that the patentee in the prosecution history defined the external appearance limitations to include outwardly visible hinges and latches.

We disagree with Clare's conclusion for two reasons. First, the specifications do not contemplate visible hinges or latches. The excerpts from the specifications cited by the patentee, which are reflected in the '795 patent column 1 lines 41–54, column 2 lines 46–52, column 3 lines 34–41, and column 5 lines 33–37, repeatedly emphasize that the external appearance of the truck is not altered except for two vertical cuts. The specific excerpts quoted by the patentee do mention hinges and laches, but the specifications as a whole make clear that the hinges and laches are not visible from the outside of the truck. *See* '795 patent col. 4 ll. 46–49 ("The hinge for each side panel is located on an inner area of the side panel so as not to be exposed to one viewing the bed from an external side position."), col. 5 ll. 23–25 ("The hinges 30 are located on the interior of the bed 12 and thus not visible from the exterior."), Figure 2 (showing the latch mechanism 25 mounted in the rear of the internal storage boxes, which are not visible from the exterior). Second, the patentee's

recitation of visible hinges and laches in the prosecution history cannot expand the scope of the specifications, particularly where the patentee incorrectly characterizes the specifications, which do not contemplate any visible features more obvious than vertical cuts. *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003) ("Representations during prosecution cannot enlarge the content of the specification . . . ."). In light of the specifications, we interpret the patentee's statements in the prosecution history as arguing that the claims are not so narrow to require "visibly indistinct" modifications. This is consistent with the district court's construction of the external appearance limitations.

We have considered all of Clare's remaining arguments and find them without merit.

## II. Summary Judgment of Non-Infringement

In view of the district court's construction of the external appearance limitations, the district court determined that no reasonable juror could find that the accused trucks met the external appearance limitations. In making this determination, the district court relied on deposition admissions by Clare's expert, Dr. Akin, who testified multiple times that the hinged panel of the RamBox's storage compartment, the lock, the two vertical and one horizontal cut lines, and the bed modifications are visible and apparent to a casual observer. The district court also relied on deposition admissions by Clare's two fact witnesses, who testified that the external door to the RamBox's storage compartment was obvious.

Clare argues that there are genuine factual disputes that prevent a finding of non-infringement at the summary judgment phase. The evidence pointed to by Clare, however, is based on an incorrect understanding of the district court's claim construction. For example, Dr. Akin in his expert report states that the *internal storage box* in the modified Dodge Ram is not obvious because a casual

observer would not know that a storage box is below the hinged panel; the hinged panel could be concealing an electronic panel or a fuel tank. Dr. Akin's statement misunderstands the district court's claim construction in two ways. First, a storage box is a separate element of the claim that must be met in order for the accused truck to infringe. If the accused truck has an electronic panel or fuel tank instead of a storage box, then the accused truck does not infringe the storage box limitation, regardless of the external appearance of the truck. Second, the external appearance limitations as construed require that the storage box, including the portion of the storage box on the side panel of the truck that opens up to expose the storage area, is not obvious from the outward appearance of the truck. If the panel is obvious from the outward appearance of the pickup truck, then the external appearance limitations are not met.

In his expert report, Dr. Akin also states that the hinged panel is not obvious because it is not visible from some angles, perspectives, and distances. The district court's claim construction, however, does not require that the hinged panel be obvious from every angle, perspective, and distance, and such a requirement would be nonsensical in the context of the specifications. Clare is correct that the construction does not specify which angles, perspectives, or distances are contemplated, but the specifications make clear that the external appearance of the truck is viewed by a casual observer looking at the modified side panel. *See, e.g.,* '795 patent col. 4 ll. 41–46 ("Upon completion of the conversion, from a side view, the only difference between the converted bed and a nonconverted bed are two vertical lines or small spaces, one just back of the front of the bed and one just forward of the taillight section of the bed, where the side panel is cut, as illustrated in FIG. 1."), col. 4 ll. 49–52 ("Thus, one would not readily recognize the modification to the bed, and

therefore those with intent to steal tools, etc. would not recognize the hidden storage arrangement.").

Clare also points to portions of Dr. Akin's expert report that discuss his opinions as to why the external panel of the RamBox is not obvious: the panel has matching contours, matching paint colors, matching texture, inconspicuous cut lines that follow the body lines of the bed, and vertical lines that are placed at an angle to match nearby structures while maintaining a flush fit between the panel and the side of the bed. Taking Dr. Akin's opinions as true for the purpose of summary judgment, we find no disputed issue of material fact to preclude summary judgment. The RamBox panel can have all the features enumerated by Dr. Akin in his expert report, and still be visible and apparent to a casual observer as Dr. Akin testified in his deposition, such that the panel is obvious from an outward appearance.

The evidence in front of the district court contained many pictures of the accused products from relevant viewpoints. Two such pictures are shown below. *See* J.A. 2932, 3404. Reviewing the evidence de novo and drawing all reasonable inferences in Clare's favor, we agree with the district court that no reasonable juror could find that the hinged portion of the RamBox's storage compartment was not obvious from the outward appearance of the accused trucks.





## CONCLUSION

The district court correctly construed the external appearance limitations and granted summary judgment of non-infringement. The decision of the district court is therefore

**AFFIRMED**

COSTS

Costs to Chrysler.