NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VR OPTICS, LLC,**
*Plaintiff-Appellant*

**VILLENCY DESIGN GROUP, LLC,**
*Third-Party Defendant-Appellant*

**ERIC VILLENCY, JOSEPH COFFEY,**
*Third-Party Defendants-Appellees*

**v.**

**PELOTON INTERACTIVE, INC.,**
*Defendant-Third-Party Plaintiff-Cross-Appellant*

---

2021-1900, 2021-1901, 2021-1918

---

Appeals from the United States District Court for the Southern District of New York in No. 1:16-cv-06392-JPO, Judge J. Paul Oetken.

---

Decided:  February 16, 2023

---

MICHAEL DAVID GANNON, Baker & Hostetler LLP, Chicago, IL, argued for plaintiff-appellant.  Also represented by LEIF R. SIGMOND, JR.; CHARLES C. CARSON, Washington, DC.

MARK A. BERMAN, Hartmann Doherty Rosa Berman & Bulbulia, LLC, Hackensack, NJ, argued for third-party defendant-appellant, third-party defendants-appellees. Also represented by PAUL S. DOHERTY, III, JEREMY B. STEIN.

STEVEN SCHORTGEN, Sheppard, Mullin, Richter & Hampton LLP, Dallas, TX, argued for defendant-cross-appellant. Also represented by JENNIFER AYERS; MATTHEW G. HALGREN, KARIN DOUGAN VOGEL, San Diego, CA.

—————————————

Before LOURIE, REYNA, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

In 2012, Peloton Interactive, Inc. (Peloton) entered a contract with Villency Design Group, LLC (VDG) under which VDG would design, develop, and manufacture what would become Peloton's stationary exercise bike. The parties agreed to another, similar contract in 2014. Before the 2014 contract expired, Eric Villency and Joseph Coffey (the sole owners and members of VDG) learned of a patent that the Peloton bike might infringe. They formed a new company, VR Optics, LLC, which acquired that patent. About six weeks after the 2014 agreement expired, VR Optics sued Peloton for patent infringement. Peloton countersued, bringing various contract and tort claims against VR Optics, VDG, and Mr. Villency and Mr. Coffey. Among these was Peloton's claim that VDG had breached a clause in the 2014 agreement that obligated VDG to defend Peloton against patent infringement actions.

The district court granted summary judgment of invalidity of VR Optics' patent and that VDG breached its duty to defend Peloton. The district court granted summary judgment denying Peloton's remaining claims—for breach of warranty, breach of the covenant of good faith and fair dealing, fraudulent concealment, and tortious interference

with contract.  Ultimately, the district court entered judgment in Peloton's favor and ordered VDG to pay Peloton's attorney's fees.

Peloton, VR Optics, and VDG each appeal.  For the reasons below, we affirm.

BACKGROUND

I

The business relationship between Peloton and VDG began in 2012, when the parties signed an agreement under which VDG would design a proprietary indoor cycling bike for Peloton.  J.A. 4132–45.  Among other things, the 2012 agreement provided that the design work done by VDG would "not infringe upon the rights of any third party."  J.A. 4137 § 2.7(c).

Two years later, the parties executed another, more comprehensive agreement, titled "Bike Development and Services Agreement."  J.A. 4362–75.  This agreement similarly provided that the work done by VDG would not infringe the intellectual property rights of any third party.  J.A. 4370–71 § 8.2(a)(3).  This 2014 agreement also contained a provision obligating VDG to "indemnify, defend and hold harmless Peloton" against claims "arising out of, or relating to, any violation or alleged violation of any intellectual property rights regarding any of the Bike Intellectual Property[1]."  J.A. 4369–70 § 7.1(b).

The 2014 agreement also provided that certain obligations of the 2014 agreement would survive termination.  Specifically, the contract states that the "termination or expiration of this Agreement shall be without prejudice . . . [to the] rights under any other provision . . . which

---

[1]    "Bike Intellectual Property" was separately defined in the agreement.  As discussed further below, the parties dispute this term on appeal.

expressly and necessarily calls for performance after expiration or termination." J.A. 4368 § 5.6(c). One such provision is § 8.3(b), which states that "[a]ll representations and warranties of Villency and Peloton contained in this Agreement will survive the termination of this Agreement." J.A. 4371. The 2014 agreement expired two years after it was signed, on June 24, 2016. J.A. 4367 § 5.1.

## II

During the term of the 2014 agreement, VDG's principals and sole members, Mr. Coffey and Mr. Villency, discovered the existence of U.S. Patent No. 6,902,513, titled "Interactive Fitness Equipment." The '513 patent is "generally directed to computerized fitness equipment," e.g., a stationary bike, that simulates "actual race conditions with other users." '513 patent col. 2 ll. 57–59. Claim 1 is representative:

A system for interactive fitness comprising:

a server;

a plurality of geographically-separated fitness equipment configured for communication with the server via a wide-area network, each of the fitness equipment comprising:

at least one operating component;

logic configured to obtain first performance parameters from the at least one operating component;

logic configured to communicate the first performance parameters to a remote fitness equipment via the wide-area network and the server;

logic configured to receive second performance parameters communicated from at least one remote fitness equipment;

> a communication interface through which data may be communicated to and from the fitness equipment;
>
> a display associated with the fitness equipment; and
>
> logic configured to drive the display in response to both the first and second performance parameters, such that *a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed*; and

a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events.

*Id.* at col. 23 ll. 12–40 (emphasis added to highlight disputed limitation). The specification explains that the bikes "may include displays . . . to provide visual, audible, or other information to the users." *Id.* at col. 10 ll. 55–57. For example, Figure 2 illustrates one embodiment of such a display:



**FIG. 2**

*Id.* at Fig. 2; *see also id.* at col. 11 ll. 24–28. The display shown in Figure 2 depicts a "graphic image of a track 202" that includes "relatively simplistic circles or dots 204 and 206 [that] may be provided to illustrate the respective competitors." *Id.* at col. 11 ll. 28–32. According to the specification, this display also includes "more detailed data on the individual competitors and their comparative performance information," including "information 208 [which] may relate to the performance of the person viewing the display" and "information 210," which "may include an instantaneous readout of the speed [at which] the competitor is travelling." *Id.* at col. 11 ll. 32–47.

The '513 patent's specification describes additional ways competitive performance data can be displayed. For example, the specification explains that performance data could be displayed on "a headset of a virtual-reality display," allowing a user to "look[] rearwardly over his or her . . . shoulder." *Id.* at col. 11 l. 63–col. 12 l. 21, Figs. 3–4.

In January 2016, Mr. Coffey and Mr. Villency began negotiating with Microsoft Technology Licensing, LLC, the

'513 patent's then-owner, to purchase the patent. In June 2016, Mr. Coffey and Mr. Villency formed a new company, VR Optics. Like VDG, VR Optics is wholly owned by Mr. Coffey and Mr. Villency. About three weeks after the 2014 agreement expired, Microsoft transferred ownership of the patent to VR Optics.

On August 11, 2016, about seven weeks after the 2014 agreement expired, VR Optics sued Peloton for infringement of the '513 patent. Peloton counterclaimed, seeking a declaratory judgment that its bikes did not infringe and that the patent was invalid because it was anticipated by U.S. Patent No. 6,997,852 (Watterson). Peloton also asserted third-party claims against VDG, the company owned by Mr. Coffey and Mr. Villency and hired by Peloton to make its stationary bike, including: (1) a claim for breach of the warranty in the 2012 and 2014 agreements that VDG's work would not infringe third-party rights; (2) a claim for breach of the 2014 agreement's duty to defend; and (3) a claim for breach of the implied covenant of good faith and fair dealing. Peloton also asserted claims of fraudulent concealment and tortious interference against Mr. Coffey and Mr. Villency in their individual capacities.

VR Optics, VDG, and Mr. Coffey and Mr. Villency each filed motions to dismiss the claims against them, which the district court denied. *See VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392 (JPO), 2017 WL 3600427 (S.D.N.Y. Aug. 18, 2017) (*Motion to Dismiss Op.*). The court then held a *Markman* hearing to construe the disputed claim terms in the '513 patent claims. *See VR Optics, LLC v. Peloton Interactive, Inc.*, 345 F. Supp. 3d 394, 411 (S.D.N.Y. 2018) (*Claim Construction Op.*). Among these terms was the performance comparison limitation, present in all of the asserted claims, requiring "logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote

fitness equipment is visually displayed."[2]    '513 patent
col. 23 ll. 30–34, col. 24 ll. 2–6.  In its *Markman* order, the
district court construed this performance comparison limi-
tation exactly as VR Optics requested.  The parties then
each moved for summary judgment.

## III

### A

In its summary judgment order, the district court be-
gan with Peloton's claim that Watterson anticipated the as-
serted claims of the '513 patent.  *See VR Optics, LLC
v. Peloton Interactive, Inc.*, No. 16-CV-6392 (JPO), 2020
WL 1644204, at \*3–5 (S.D.N.Y. Apr. 2, 2020) (*Summary
Judgment Op.*).

Watterson's specification describes an exercise pro-
gram that can run simultaneously on multiple, geograph-
ically separate exercise machines.  *See* Watterson,
Abstract, col. 1 ll. 31–35.  Among other things, Watterson
discloses a "personalized race" between "two or more indi-
viduals . . . where they may race one against the other,
while viewing graphical representations of the distan[ce],
time, and speed of the other competitors."  *Id.* at col. 44
ll. 32–37.  Watterson's specification explains that the pro-
gram "tracks the exercising activities of competing users,"
allowing "[e]ach competitor [to] compare the total distance
traveled against other competitors."  *Id.* at col. 43 ll. 29–37.
This comparison can be presented by a "display [that] may
include a racing track that shows a relative position of each

---

[2]    In claim 6, the word "drive" is replaced by the word
"control."  '513 patent, col. 24 l. 2.  The court determined
there was no material difference between these words.
*Claim Construction Op.*, 345 F. Supp. 3d at 401–02.  The
parties do not dispute this finding on appeal.

competitor one with another, or a trail that each competitor races along." *Id.* at col. 44 ll. 59–62.

At summary judgment, the parties agreed "that the Watterson patent discloses all" claim limitations in the claims—save one. *Summary Judgment Op.*, 2020 WL 1644204, at *3. The parties disputed only whether Watterson disclosed the performance comparison limitation requiring "logic configured to drive the display . . . such that a performance comparison . . . is visually displayed." *Id.* As discussed above, the court had previously construed this limitation, just as VR Optics had asked, to require "logic configured to drive the display to visually display a difference in performance between the fitness equipment and at least one remote fitness equipment based on a difference between the first and second performance parameters." *Claim Construction Op.*, 345 F. Supp. 3d at 411–12.

The district court determined that there was no genuine dispute of fact that Watterson disclosed the disputed performance comparison limitation. *Summary Judgment Op.*, 2020 WL 1644204, at *3–5. In particular, the court explained that Watterson displays a "difference in performance" as required by the claim construction "because it contemplates a 'personalized race' between 'two or more individuals . . . where they may race one against the other, *while viewing graphical representations of the distan[ce], time, and speed of other competitors,*' and a 'display [that] may include a racing track that *shows a relative position of each competitor one with another*, or a trail that each competitor races along.'" *Id.* at *4 (emphasis in original) (quoting Watterson, col. 44 ll. 32–37, 60–62). To emphasize its point, the court noted that in its claim construction opinion, it had "cited as an exemplar of the 'performance difference' limitation an embodiment" in the '513 patent's specification: "a visual read indication [that] show[s] where the particular user is in relation to the user or users that are operating the coupled fitness equipment." *Id.* (quoting '513 patent, col. 5 ll. 29–33). This embodiment, the court

explained, "is materially indistinguishable from that described in" Watterson. *Id.*

VR Optics asserted that the report of its technical expert, Steven Lenz, created a genuine issue of material fact that precluded summary judgment. Mr. Lenz opined that Watterson did not display a difference in performance because Watterson required "users to make their own comparisons." J.A. 6642–43 (Lenz Decl. ¶¶ 87–88). He explained that Watterson's display of the relative distance, time and speed of the user and the competitor requires the user to make a mental comparison to understand the difference in performance, and thus Watterson does not actually display a "difference in performance." *Id.*

The court disagreed, explaining that "[Mr.] Lenz's opinion rests on an unduly cramped reading" of its claim construction. *Summary Judgment Op.*, 2020 WL 1644204, at *4. Specifically, the court explained that the "difference in performance" requirement in its construction does not require that the user not make a mental comparison, as VR Optics and Mr. Lenz urged. *Id.* Instead, the court explained that the display disclosed in Watterson—showing the relative position of each competitor on a simulated track—is "a performance comparison, just as an ordinal ranking is a numerical representation of the competitors' relative performance." *Id.* The court reasoned that the "embodiment described in" Watterson "no more requires a user to manually execute the comparison than any other conceivable display of relative performance." *Id.*

Because Mr. Lenz's opinion was inconsistent with the court's construction of the disputed limitation, the court excluded that portion of Mr. Lenz's testimony. *Id.* (citing *Plew v. Ltd. Brands, Inc.*, No. 08-cv-3741, 2012 WL 379933, at *3 (S.D.N.Y. Feb. 6, 2012) (expert witnesses may not "offer testimony that conflicts with the Court's construction of the claim")). The court thus entered summary judgment

that the asserted claims of the '513 patent are invalid as anticipated by Watterson.[3]

B

The court then considered Peloton's various contract and tort claims against third parties VDG, Mr. Coffey, and Mr. Villency. First, the court determined that the "success of Peloton's argument for invalidity dooms its claim for breach of the warranties in the 2012 and 2014 Agreements" that the bike developed by VDG would not infringe any third-party intellectual property rights. *Id.* at *5. Specifically, because the "alleged violation of those provisions is . . . premised on the infringement of a valid patent," the court's finding of invalidity rendered those claims for breach effectively moot. *Id.* The court thus entered summary judgment on those claims in VDG's favor.

The court similarly entered summary judgment in VDG's favor on Peloton's claim for breach of the covenant of good faith and fair dealing. *Id.* This claim required Peloton to show that it was "deprive[d] . . . of the right to receive the benefits under" the agreement. *Id.* (quoting *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990)). But because the court had determined that Peloton's bike did not infringe the '513 patent because the patent claims are invalid, the court found Peloton had thus not been "deprived . . . of the fruits of the 2012 and 2014 Agreements: . . . a non-infringing, proprietary indoor bike." *Id.*

Peloton's claim for fraudulent concealment was similarly unsuccessful. Although this claim survived VDG's motion to dismiss, *see Motion to Dismiss Op.*, 2017 WL

---

[3] In its summary judgment briefing, Peloton made other arguments for invalidity and noninfringement that the district court did not address in view of this determination. *Summary Judgment Op.*, 2020 WL 1644204, at *5.

3600427, at *4–5, the court found it could not survive summary judgment, *Summary Judgment Op.*, 2020 WL 1644204, at *5–6. Specifically, Peloton had only presented evidence showing that "VDG knew of the *existence* of the '513 patent before entering [into] the 2014 Agreement." *Id.* at *6 (emphasis in original). But Peloton had not presented evidence that VDG knew about the "threat of an imminent lawsuit" before entering that agreement. *Id.* Peloton argued that, had it known of the impending litigation, it would have taken alternative actions, like acquiring the patent itself or ceasing payments to VDG. But the court found that Peloton had "identified no evidence—let alone clear and convincing evidence, as New York law requires—that it 'actually relied' on VDG's omission in forgoing these potential routes." *Id.* The court thus again entered summary judgment in VDG's favor on this claim. *Id.*

The court ruled in Peloton's favor, however, on its claim that VDG breached the 2014 agreement by failing to defend it against VR Optics' infringement suit. In the court's view, "[t]he contract's unambiguous terms . . . obligate[] VDG to defend Peloton against [VR Optics'] patent action." *Id.*

Lastly, the court addressed Peloton's claim that Mr. Coffey and Mr. Villency tortiously interfered with the contract between Peloton and VDG by inducing VDG to breach the contract. Because the court had found that Peloton did not infringe the '513 patent (because its claims are invalid), the only remaining breach was VDG's breach of the duty to defend. The court explained that Mr. Coffey and Mr. Villency were employees of a corporate party to the contract (VDG), so establishing tortious interference under New York law required Peloton to show that they "exceeded the bounds of" their authority in allegedly causing the breach of contract. *Id.* at *8 (quoting *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 186 (S.D.N.Y. 2014)). The court determined that "Peloton ha[d] produced no evidence that [Mr.] Villency and [Mr.] Coffey were acting outside the bounds of their authority or in their

own interest, as distinguished from VDG's, when they induced VDG to refuse to defend Peloton in this action." *Id.* Thus, the court entered summary judgment in favor of Mr. Coffey and Mr. Villency.

VR Optics, VDG, and Peloton each appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1). For the below reasons, we affirm.

## DISCUSSION

VR Optics appeals the district court's summary judgment that the '513 patent is invalid as anticipated by Watterson, arguing that the court "apparent[ly] reinterpret[ed]" its prior claim construction. VR Optics' Br. 1–2. VDG appeals the court's summary judgment that VDG had a contractual duty to defend Peloton against VR Optics' patent infringement claims. In VDG's view, the duty to defend did not survive the termination of the agreement and, in any event, was not triggered by VR Optics' infringement suit. And Peloton appeals the court's summary judgment denying its claims for breach of the covenant of good faith and fair dealing; fraudulent concealment; and tortious interference.

We review a district court's summary judgment under the law of the regional circuit, here the Second Circuit. *Convolve, Inc. v. Compaq Comp. Corp.*, 812 F.3d 1313, 1317 (Fed. Cir. 2016). "The Second Circuit reviews the grant or denial of summary judgment de novo." *Id.* (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008)). Summary judgment is appropriate when there is no genuine issue of material fact and may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56. We also apply regional circuit law when interpreting a contract if the question "is neither unique to patent law nor intimately involved in the substance of the patent rights." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations*

*Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002). In the Second Circuit, "the interpretation of a contract . . . presents a legal question . . . reviewed de novo." *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 178 (2d Cir. 2019) (quoting *Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 293 (2d Cir. 2009)).

I

We begin with VR Optics' argument that the district court erred in entering summary judgment of anticipation in view of Watterson. VR Optics' Br. 23–29. The parties agree that Watterson discloses all limitations of the asserted claims except displaying a "performance comparison between the fitness equipment and at least one remote fitness equipment." *See Summary Judgment Op.*, 2020 WL 1644204, at *3. Further, no party challenges the district court's construction of the performance comparison limitation to mean "logic configured to drive the display to visually display a *difference in performance* between the fitness equipment and at least one remote fitness equipment based on a difference between the first and second performance parameters." *See Claim Construction Op.*, 345 F. Supp. 3d at 411–12 (emphasis added). Rather, the parties challenge the meaning of district court's claim construction.

We affirm the district court's summary judgment of anticipation. Contrary to VR Optics' assertion, the court's construction merely requires "visually display[ing] *a difference in performance* between the fitness equipment and at least one remote fitness equipment," *Claim Construction Op.*, 345 F. Supp. 3d at 411–12; it does not specify how that difference may be displayed to the user. Accordingly, Mr. Lenz's testimony cannot preclude summary judgment because it is based on an unduly narrow reading of the district court's claim construction and therefore does not

demonstrate a genuine issue of material fact.[4]  *See Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1363 (Fed. Cir. 2019) (where the expert's opinion contradicts the court's construction, "the district court is not obligated to credit [that] expert's testimony" at summary judgment).

As it did below, VR Optics argues that the district court's claim construction, although not explicitly stated, nevertheless requires a display "that does not require a mental comparison by the user" to determine "who leads and who trails."  VR Optics' Br. 22.  We reject VR Optics' attempt to reinterpret the claim.  First, the court adopted VR Optics' proposed construction verbatim, *id.*, so VR Optics cannot seek to change that construction on appeal.  *See, e.g., N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("[W]e look with 'extreme disfavor' on appeals that allege error in claim constructions

---

[4]    The parties' briefing phrases this issue as one of exclusion of expert testimony.  *See* VR Optics' Br. 29–30; Peloton's Br. 55–57; *see also Summary Judgment Op.*, 2020 WL 1644204, at *4 (stating that because Mr. "Lenz's opinion is therefore inconsistent with the . . . [c]ourt's prior construction[,] [i]t is thus excluded").  A district court's exclusion of expert testimony is an issue both we and the Second Circuit review for abuse of discretion.  *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1366 (Fed. Cir. 2014); *Sarkees v. E. I. Dupont de Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021).  But the effect of such exclusion on summary judgment is equivalent to the court determining that Mr. Lenz's testimony is based on an incorrect claim construction and thus cannot create a genuine dispute of fact to preclude summary judgment.  *See Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1332–33 (Fed. Cir. 2016) (expert testimony "based on an incorrect understanding of the district court's claim construction" will not preclude summary judgment).

that were advocated below by the very party now challenging them."). In any event, the district court's reading of its construction is consistent not only with the language of its construction, but also the specification, which similarly does not limit how the difference in performance must be displayed. '513 patent col. 11 ll. 20–22 ("It should be appreciated from the discussion herein that various types and configurations of displays may be provided for the user."). Indeed, the specification consistently refers to a variety of possible displays of competitive performance data. *See, e.g.*, *id.* at col. 5 ll. 29–33 ("The displays . . . on the various fitness equipment may provide a visual read indication show[ing] where the particular user is in relation to the user or users that are operating the coupled fitness equipment."); col. 6 l. 55–col. 7 l. 9 (stating that "the display provided on the fitness equipment may be relatively simple in nature," then describing a more complex display of racing along a virtual track); col. 7 ll. 10–11 ("[V]irtual-reality technology may be implemented."); col. 8 ll. 16–17 ("[performance] information could be displayed graphically").

VR Optics relies on Figure 2, *supra* p. 6, and its accompanying description in the specification for its narrow interpretation of the district court's claim construction. In VR Optics' view, only some portions of Figure 2 show a "difference in performance." Specifically, according to VR Optics, the "trail by" and "lead by" lines of "additional textual information 208 and 210" satisfy the "difference in performance" limitation, but the first three lines of 208 and 210 listing the user's and the competitor's speed and distance traveled do not. VR Optics' Br. 20–21.

The specification wholly undermines VR Optics' argument. Contrary to VR Optics' suggestion, the specification does not indicate that only the "trail by" and "lead by" lines in Figure 2 show a difference in performance. Rather, the specification uses the phrase "detailed data on the individual competitors and their comparative performance information" to refer to all of the textual information 208 and

210, which includes the user's speed and distance and the competitor's speed and distance, as well as the graphic image 202 with "circles or dots 204 and 206 . . . to illustrate the respective competitors." '513 patent col. 11 ll. 26–35.

Because we reject VR Optics' attempt to reconstrue the claims, we affirm the district court's summary judgment that the asserted claims of the '513 patent are invalid as anticipated by Watterson.

## II

We next address whether VDG had a duty to defend Peloton in this action. We agree with the district court that it did. VDG makes three arguments on appeal: (1) that the duty to defend did not survive the agreement's termination; (2) that under New York law, its defense obligation can be no greater than its indemnification obligation; and (3) that the duty to defend was not implicated by this case because the asserted patent does not accuse "Bike Intellectual Property" as defined in the agreement. We take each argument in turn.

## A

VDG asserts that its duty to defend Peloton did not survive termination of the 2014 agreement. Accordingly, because VR Optics filed its complaint after the agreement expired, VDG argues it had no duty to defend Peloton. We disagree.

As an initial matter, we agree with Peloton that VDG waived this argument. It is undisputed that VDG did not make this argument before the district court in opposing summary judgment. VDG's Reply Br. 13–16; Peloton's Br. 58. "Preservation of appeal rights is a procedural issue[] for which this court looks to the law of the regional circuit." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1350 (Fed. Cir. 2000). In the Second Circuit, if a party raises an argument in a motion to dismiss but does "not renew the argument in [its] motion for summary

judgment," that argument is "not preserved for review and [is] deemed waived." *Darnell v. Pineiro*, 849 F.3d 17, 38 n.17 (2d Cir. 2017); *see also Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (holding arguments that were available to a party below, but not raised by that party at summary judgment, were waived on appeal).

VDG reasons that it need not have raised this argument at summary judgment because it had already unsuccessfully presented this argument in its motion to dismiss. *See* VDG's Reply Br. 14. It argues that because the court concluded at the motion to dismiss stage that the duty to defend survived the agreement's termination, that became the law of the case; thus, in VDG's view, it would have been futile to raise it again at summary judgment. *Id.* at 14–15.

But the district court did not address whether the duty to defend survived the agreement's termination in its denial of VDG's motion to dismiss. *See Motion to Dismiss Op.*, 2017 WL 3600427, at *2. It only held that "VDG's obligation to provide 'Bike Intellectual Property' that does not infringe a third-party patent unambiguously survived the contract's termination in June 2016." *Id.* The court did not expressly say that the duty to defend survived termination of the contract; nor did it provide any rationale for why it would have survived termination. Put simply, the district court did not address this issue, and VDG undisputedly did not raise it in its summary judgment briefing. Accordingly, VDG has waived this argument. *See Darnell*, 849 F.3d at 38 n.17; *Allianz*, 416 F.3d at 114.

In any event, this argument also fails on the merits. The unambiguous language of the agreement makes clear that the duty to defend survived termination. Resolving this issue requires consideration of several terms of the 2014 agreement.

The duty to defend is in Section 7.1 of the agreement. J.A. 4369–70. In that section, VDG "agree[d] to indemnify, defend[,] and hold harmless Peloton . . . against any claim

. . . arising out of, or relating to, any violation or alleged violation of any intellectual property rights regarding any of the Bike Intellectual Property." *Id.* § 7.1(b).

Section 5.6 governs the survival of rights after termination. This section states that the "termination or expiration of this Agreement shall be without prejudice" to the "rights under any other provision of this agreement which expressly and necessarily calls for performance after expiration or termination." J.A. 4368 § 5.6(c). One provision that expressly calls for such post-expiration performance is Section 8.3(b), which states that "[a]ll representations and warranties of Villency [Design Group] and Peloton contained in this Agreement will survive the termination of this Agreement." J.A. 4371 § 8.3(b).

The agreement is thus clear: "[a]ll representations and warranties" made by VDG survived termination. *Id.* One such representation and warranty is to "indemnify, defend[,] and hold harmless Peloton" against claims "regarding any of the Bike Intellectual Property." J.A. 4369–70 § 7.1(b). Accordingly, the unambiguous terms of the contract clarify that VDG's duty to defend Peloton survived the termination of the agreement.

VDG argues that the duty to defend clause is not a representation or warranty. According to VDG, Section 8.3(b)'s reference to "representations and warranties" includes only those provisions contained in Section 8.2., titled "Representations and Warranties." We disagree. Section 8.3(b) refers to "[a]ll representations and warranties of Villency [Design Group] . . . contained *in this Agreement*"— not, for example, those "contained in this Article" or "contained in Section 8.2." This suggests that the "representations and warranties" described by Section 8.3(b) are not limited to those enumerated in Section 8.2. If, as VDG argues, the parties intended for Section 8.3(b)'s survival provision to apply only to certain representations and warranties, they could have said so. But as it stands, that

provision unambiguously states that it applies broadly to all representations and warranties "in this Agreement." *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) ("We must give effect and meaning to every term of a contract." (cleaned up)).

This conclusion is further supported by the fact that Section 8.3(b) does not capitalize the terms "representations" or "warranties." J.A. 4371 § 8.3(b). Contrast this, for example, with the agreement's use of the capitalized term "Bike Intellectual Property" to refer back to the term previously defined in Section 1.7(a), *see* J.A. 4369–70 § 7.1(b), and the use of the capitalized term "Bikes" to refer back to the term previously defined in the preamble, *see* J.A. 4364 § 1.7(a). The agreement's use of defined terms by using capitalization demonstrates that the parties "were perfectly capable of using such terms when they wished to do so." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 403 F. Supp. 3d 257, 265 (S.D.N.Y. 2019). Their decision not to capitalize the terms "representations" and "warranties" "should not be ignored and the term should therefore be accorded its ordinary meaning." *Id.* (citing *Sunbelt Rentals, Inc. v. Charter Oak Fire Ins. Co.*, 839 F. Supp. 2d 680, 688–89 (S.D.N.Y. 2012) (faulting party's failure "to draw a distinction between the use of the term 'equipment' generically and its use as a (capitalized) defined term")). Thus, VDG's duty to defend survived the agreement's termination.

B

Citing several New York state law cases, VDG next argues that, under New York law, its duty to defend can be no broader than its duty to indemnify. Because Peloton was not found liable for patent infringement—a prerequisite for indemnification—VDG argues that it did not breach any duty to defend. VDG's Br. 26–29. VDG's argument, however, is based on a misunderstanding of the precedent it cites.

In New York, "the 'duty to defend' is presumed only in insurance policies, [and] the common law imposes no such duty on contractual indemnitors more generally. Accordingly, an indemnitor's obligation to defend must emanate (if at all) from the language of the contract." *Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 14-cv-7222, 2015 WL 4254033, at *7 (S.D.N.Y. 2015). *Dresser-Rand* clarified that this presumption is not meant to undermine unambiguous contract language. "If a contractual defense obligation is, by its own terms, exceedingly broad, a court will not artificially circumscribe it simply because the indemnitor is not an insurer." *Id.*; *see also McCleary v. City of Glens Falls*, 819 N.Y.S.2d 607, 609 (N.Y. App. Div. 2006) ("Although [Defendant] contends that its duty to defend is no broader than its duty to indemnify because it is not an insurer . . . , that distinction has no significance here, where the [plaintiff] is due the full benefit of the bargain it reached . . . under the clear and unambiguous terms of the contract.").

The contracts at issue in *Dresser-Rand* and *McCleary* are instructive. In *Dresser-Rand*, the court determined that a contract provision requiring Ingersoll Rand (a non-insurer) to "indemnify [and] defend" Dresser-Rand "from . . . any and all . . . claims . . . relating to . . . Products Liabilities Losses" "could be broad enough to trigger a defense obligation." 2015 WL 4254033, at *8. There, however, the court declined to adjudicate the precise bounds of Ingersoll Rand's defense obligations because the case was not yet ripe. *Id.* at *8–9. In *McCleary*, the contract provided that the South Warren Snowmobile Club would "defend, indemnify and hold harmless [Warren] County . . . from any and all claims . . . which the County . . . may suffer as a result of . . . the Club's activities." 819 N.Y.S.2d at 609. The court determined that this broad contractual provision obligated the Club to defend the County even in the absence of a finding of liability. *Id.*

In this case, VDG agreed to "indemnify, *defend* and hold harmless Peloton" against certain intellectual property claims. J.A. 4369–70 § 7.1(b) (emphasis added). VDG characterizes this provision as a "garden variety defense and indemnity clause," VDG Br. 28, asking us to interpret it as nothing more than an agreement to indemnify Peloton. But as the district court explained, the language of this provision "admits of no limiting construction." *Summary Judgment Op.*, 2020 WL 1644204, at *7. Here, VDG agreed to "indemnify, defend and hold harmless Peloton"—not just "indemnify." Just as in *McCleary*—where the court interpreted an almost identical contract provision obligating one party to "defend, indemnify and hold harmless" the other—the agreement here shows that the parties understood the duty to defend was distinct from the duty to indemnify. 819 N.Y.S.2d at 609. VDG thus cannot escape the express language of the contract. Accordingly, VDG also had a duty to defend Peloton that was separate and distinct from its duty to indemnify.

C

Finally, VDG argues that its duty to defend was not triggered by VR Optics' suit because VR Optics does not accuse "Bike Intellectual Property," as defined in the agreement, of infringing the '513 patent. VDG's Br. 29–35. The duty to defend clause obligates VDG to "indemnify, defend and hold harmless Peloton . . . against any claim . . . arising out of, or relating to, any violation or alleged violation of any intellectual property rights regarding any of the Bike Intellectual Property." J.A. 4369–70 § 7.1(b). VDG argues that "Bike Intellectual Property" is "limited to intellectual property that VDG created," VDG's Br. 32, which it asserts is only the bike's physical frame. Because VR Optics' suit targeted the interactive fitness technology, not the bike's physical frame, VDG argues that it was not obligated to defend Peloton against that suit. *Id.* at 29–35. Peloton argues that the plain language of the contract confirms that the term "Bike Intellectual Property" is not

limited only to that intellectual property contributed by VDG. Peloton's Br. 64–68.

In its summary judgment order, the district court did not resolve the parties' dispute about the definition of "Bike Intellectual Property." Instead, the court considered the language of the duty to defend clause and observed that the clause was drafted broadly. *Summary Judgment Op.*, 2020 WL 1644204, at *6–8. The district court concluded that VR Optics' "claims rest in part on the assertion that the bike frame itself satisfies some limitations of the '513 patent." *Id.* at *7. For example, the limitations of the asserted claims include: "geographically-separated fitness equipment" comprising "at least one operating component," '513 patent col. 23 ll. 14, 18 (claim 1); "fitness equipment . . . selected from the group . . . [including] an exercise bike," *id.* col. 23 ll. 41–43 (claim 2); the system defined in claim 1 wherein the operating component "is one selected from the group consisting of . . . a flywheel," *id.* col. 23 ll. 52–53 (claim 4); and "fitness equipment" comprising "at least one operating component configured to provide an aspect of exercise for the user of the fitness equipment," *id.* col. 23 ll. 59–61 (claim 6). The court thus determined it was unnecessary to resolve the parties' dispute about the meaning of the term "Bike Intellectual Property," because, even under VDG's restrictive view of that term, VR Optics' suit still "regard[s] Bike Intellectual Property" and thus triggered the duty to defend. *Summary Judgment Op.*, 2020 WL 1644204, at *7.

We agree with the district court that the duty to defend clause is broad. VDG's duty to defend explicitly extends to "*any* claim," "arising out of . . . *any* violation or alleged violation . . . regarding *any* of the Bike Intellectual Property." J.A. 4369–70 § 7.1(b) (emphasis added); *see Cook v. Wilkie*, 908 F.3d 813, 818 (Fed. Cir. 2018) ("As the Supreme Court has recently observed, 'the word "any" naturally carries "an expansive meaning.""'" (quoting *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018))). But we are inclined to

instead resolve this issue by considering the meaning of "Bike Intellectual Property." The agreement defines "Bike Intellectual Property" as:

> *all intellectual property relating to the Bikes,*[5] *including, without limitation*, all designs (*including, without limitation, those created by Villency* prior to or during the Term of this Agreement), inventions, improvements, discoveries, data, concepts, ideas, processes, methods, techniques, know-how, and information respecting the Bikes conceived, made, or produced by Villency prior to and/or during the course of performing the Product Development Services and/or Manufacturing Services under this Agreement, or made or produced as the result of the joint efforts of Peloton and Villency prior to or during the Term of this Agreement.

J.A. 4364 § 1.7(a) (emphasis added).

This language broadly defines "Bike Intellectual Property" to include "*all* intellectual property relating to the bikes, *including, without limitation*," the intellectual property contributed by VDG. This provision expressly includes VDG's contributions, but does so "without limitation," thus clearly contemplating intellectual property beyond those contributions. *See, e.g.*, *In re Enron Creditors Recovery Corp.*, 370 B.R. 64, 75 (S.D.N.Y. 2007), aff'd in part, rev'd in part, 380 B.R. 307 (S.D.N.Y. 2008) (the word "includes" "operates as a nonrestrictive modifier"); *Willow Wood Rifle & Pistol Club, Inc. v. Town of Carmel Zoning Bd. of Appeals*, 496 N.Y.S.2d 548, 551 (N.Y. App. Div. 1985) (the words "include" and "including" are terms of enlargement, not of limitation, and their use indicates there are other items that can be included even if they are not specifically

---

[5]   "Bikes" was defined as Peloton's "proprietary indoor cycling bikes." J.A. 4362.

enumerated). We do not see a basis to read out the language "all" or "without limitation," as VDG would have us do; indeed, it would be inappropriate for us to do so. *See Spinelli*, 903 F.3d at 200 ("We must give effect and meaning to every term of a contract." (cleaned up)); *150 Broadway N.Y. Assocs., L.P. v. Bodner*, 14 A.D.3d 1, 6 (N.Y. App. Div. 2004) (courts must "interpret a contract so as to give meaning to all of its terms"). We thus agree with Peloton that this provision's broad, clear language extends beyond the intellectual property contributed by VDG to include "all intellectual property relating to the Bikes." J.A. 4364 § 1.7(a).

This conclusion is bolstered by consideration of how the term is used throughout the contract. For example, VDG agreed that "[a]ll Bike Intellectual Property *provided by [VDG]* will be originally created exclusively by" VDG. J.A. 4370–71 § 8.2(a)(3) (emphasis added). If the term "Bike Intellectual Property" were already limited to that provided by VDG, this provision's use of the qualifier "provided by [VDG]" would be redundant. But we must assume that every term of the contract has meaning, *Spinelli*, 903 F.3d at 200, and thus that the qualifier was required in this provision to narrow the broad term. Later in that same section, VDG represented and warranted "that the Bike Intellectual Property does not and will not infringe upon the rights of any third party." J.A. 4370–71 § 8.2(a)(3). In this case, the defined term is used without a qualifier, indicating the parties intended this portion of the provision to be broader. *See U.S. Fidelity & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 233 (1986) (omission of term in one provision of contract but inclusion in another "must be assumed to have been intentional").

Where the language of the contract is clear, our inquiry begins and ends with that language. *See, e.g., 150 Broadway*, 14 A.D.3d at 6. Here, the term "Bike Intellectual Property" is defined broadly and is not limited to the intellectual property provided by VDG. VDG's duty to defend

was thus triggered by VR Optics' infringement suit against Peloton, which asserted a "violation of [] intellectual property rights regarding any of the Bike Intellectual Property." J.A. 4369–70 § 7.1(b).

\* \* \*

In sum, we conclude that VDG had a duty to defend Peloton; that the duty to defend survived termination of the agreement; and that VDG was obligated to defend Peloton in this action. We thus affirm the district court's summary judgment on this issue.

## III

We now address the remaining contract and tort claims at issue in this appeal: Peloton's claims against VDG for fraudulent concealment, breach of the implied covenant of good faith and fair dealing, and breach of warranty, and Peloton's claim against Mr. Coffey and Mr. Villency for tortious interference with contract. The district court entered summary judgment against Peloton for each of these claims. We affirm.

We turn first to the fraudulent concealment claim against VDG. "The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *DeSole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013) (cleaned up). Each of these elements "must be shown by clear and convincing evidence." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995). Peloton asserts that VDG knew of the threat of impending infringement litigation but did not disclose that threat to Peloton. Peloton's Br. 76–77. Peloton argues that, had it known that the '513 patent would soon be asserted against it, it would have "immediately terminated the 2014 Agreement" or "negotiated with

Microsoft to purchase the '513 patent itself." *Id.* at 77. In its summary judgment order, the district court found that "conjecture notwithstanding, Peloton has identified no evidence—let alone clear and convincing evidence, as New York law requires—that it 'actually relied' on VDG's omission in forgoing these potential routes." *Summary Judgment Op.*, 2020 WL 1644204, at \*6.

We agree with the district court. Peloton presents only attorney argument that it would have taken action to terminate the agreement or purchase the '513 patent had VDG informed it of the impending litigation. *See* Peloton's Br. 76–77. Regarding Peloton's claim that it would have "immediately terminated the 2014 Agreement," not only does Peloton not cite to any evidence supporting this claim, but the contract itself also suggests that Peloton did not actually have the right to terminate the contract unilaterally. *See* J.A. 4367 § 5.2 (allowing termination by Peloton if VDG "fails to perform," if Mr. "Villency ceases to be employed by or otherwise associated with" VDG, or for force majeure); § 5.3 (allowing *partial* termination by Peloton for any reason after a set period of performance). And regarding Peloton's assertion that it would have "purchase[d] the '513 patent itself," Peloton's Br. 77, Peloton again cites no evidence. As the district court put it, "[m]erely hypothesizing a road not taken is not enough . . . . Peloton has failed to create a genuine dispute." *Summary Judgment Op.*, 2020 WL 1644204, at \*6. We thus affirm the district court's summary judgment on this issue.

Next, we consider Peloton's claim against VDG for breach of the implied covenant of good faith and fair dealing. To succeed on that claim, Peloton must show that VDG has acted "in a manner that, although not expressly forbidden by any contractual provision," has deprived Peloton "of the right to receive the benefits under their agreement." *Don King Prods.*, 742 F. Supp. at 767. The district court correctly observed that, because of the summary judgment of invalidity, Peloton has not been deprived "of the fruits of

the 2012 and 2014 Agreements": "a non-infringing, proprietary indoor bike." *Summary Judgment Op.*, 2020 WL 1644204, at \*5. Because it has not been deprived of the right to receive its contracted-for benefits, Peloton thus cannot bring a claim for breach of the implied covenant of good faith and fair dealing. We affirm the district court's granting of summary judgment on this claim.

We now turn to Peloton's claim for breach of warranty against VDG. The district court determined that because the '513 patent is invalid—and thus Peloton is not liable for infringing that patent—VDG did not breach its warranty that its bikes would not infringe the intellectual property rights of third parties. *Id.* (citing J.A. 4370–71 § 8.2(a)(3)). Because we affirm the district court's invalidity finding, we also affirm the court's granting of summary judgment that VDG did not breach its warranty.

Finally, we consider Peloton's claim for tortious interference with contract against Mr. Coffey and Mr. Villency. Under New York law, a claim for tortious interference requires that (1) a valid contract exists; (2) a third party had knowledge of the contract's existence; (3) that third party intentionally and improperly procured the breach of the contract; and (4) the breach resulted in harm. *See TVT Records v. The Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005). If a tortious interference claim is brought against an employee or agent of a corporate party to the contract, that individual is only considered a third party if he "exceeded the bounds of his [] authority" in inducing the breach or if his actions were motivated only by his personal gain. *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996); *In re MF Glob. Holdings*, 998 F. Supp. 2d at 186.

Here, like with its claim for fraudulent concealment, Peloton has failed to support its arguments with relevant record evidence. Because, as discussed above, VDG has not breached any warranty, the only breach Peloton may rely on for this claim is the breach of the duty to defend. But

Peloton's cited evidence relates exclusively to the actions taken by Mr. Coffey and Mr. Villency in purchasing the '513 patent—evidence that is unrelated to VDG's breach of the duty to defend. *See* Peloton's Br. 78–81. As the district court correctly observed, "Peloton has produced no evidence that [Mr.] Villency and [Mr.] Coffey were acting outside the bounds of their authority or in their own interest, as distinguished from VDG's, when they induced VDG to refuse to defend Peloton in this action." *Summary Judgment Op.*, 2020 WL 1644204, at \*8. We similarly affirm the district court's granting of summary judgment on this claim.

## CONCLUSION

We have considered the parties' remaining arguments and are unpersuaded. For the above reasons, we affirm the district court's summary judgments.

## **AFFIRMED**

### COSTS

No costs.