# In the United States Court of Federal Claims

No. 21-1312V
(Filed Under Seal: February 26, 2025)
(Reissued: March 20, 2025)[*]
**FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| WILLIAM RECORD, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH AND | * |
| HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Brian Robert Arnold*, Brian R. Arnold & Associates, Richardson, TX, for Petitioner.

*Jay Travis Williamson*, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for Respondent. With him on the briefs were *Brian M. Boynton*, Principal Acting Assistant Attorney General, *C. Salvatore D'Alessio*, Director, *Heather L. Pearlman*, Deputy Director, and *Lara A. Englund*, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

Petitioner William Record sought relief under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 to -34 ("Vaccine Act"), for an alleged bilateral shoulder injury related to vaccine administration ("SIRVA"). SIRVA, as discussed below, is a "Table" injury subject to simplified proof of causation. 42 C.F.R. §§ 100.3(a)(VIII), 100.3(a)(XIII), 100.3(c)(10). But the Chief Special Master found that the Petitioner had not demonstrated a Table injury, and so denied recovery. *See* Entitlement Decision ("Entitlement Dec.") (ECF 60). Petitioner filed a motion for review, which has been fully briefed and argued.[1] I conclude that aspects of the

---

[*] This Opinion was issued under seal on February 26, 2025. The parties were directed to propose redactions by March 12, 2025. No proposed redactions were submitted. The Court hereby releases publicly the Opinion and Order of February 26 in full.

[1] Petitioner's Mot. for Review ("Pet.'s Mot.") (ECF 61); Respondent's Resp. to Mot. for Review ("Resp.'s Br.") (ECF 64).

Entitlement Decision are not explained with enough detail for meaningful review. Thus, I **REMAND** for further proceedings.[2]

## BACKGROUND

### I.    The Vaccine Act

To obtain compensation under the Vaccine Act, a petitioner must prove that a vaccine caused an injury. *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). There are two ways to show that a vaccine caused a given medical condition: (1) "through a statutorily-prescribed presumption of causation upon a showing that the injury falls under the Vaccine Injury Table ('Table injury')," *id.* (citing 42 U.S.C. § 300aa-14(a)),  or (2) by establishing causation in fact "where the complained-of injury is not listed in the Vaccine Injury Table ('off-Table injury')," *id.* (citing 42 U.S.C. §§ 300aa-13(a)(1),  300aa-11(c)(1)(C)(ii)(I)).

The presumption of causation for Table injuries applies when petitioners receive covered vaccines and then experience specified injuries within specified time periods.[3] For many injuries listed as possible Table injuries, the Table includes "Qualifications and Aids to Interpretation" ("QAIs") that define the injury and explain how the existence of the injury should be established. *See* 42 C.F.R. § 100.3(c). If a petitioner "can establish that [he] received a listed vaccine and experienced such symptoms or injuries within the specified timeframes, [he] has met [his] prima facie burden to prove that the vaccine caused [his] injuries." *de Bazan v. Sec'y of Health & Hum. Servs.*, 539 F.3d 1347, 1351 (Fed. Cir. 2008).

For both Table and off-Table injuries, to receive compensation, a Petitioner must demonstrate that he "suffered the residual effects or complications of [the alleged injury] for more than 6 months after the administration of the vaccine." 42 U.S.C. § 300aa-11(c)(1)(D)(i).

Petitioner has alleged that he sustained SIRVA in both arms after receiving vaccinations for Hepatitis A and B.[4] Am. Pet. at 2 (ECF 35). SIRVA is a Table injury

---

[2] This Court has jurisdiction. *See* 42 U.S.C. §§ 300aa-11(c), 300aa-12, 300aa-16(a). Petitioner timely moved for review. *See* 42 U.S.C. § 300aa-12(e)(1).

[3] That distinguishes Table cases from off-Table cases, in which a petitioner must prove causation in fact by preponderance of the evidence. *Trinnaman v. Sec'y of Health & Hum. Servs.*, 171 Fed. Cl. 317, 322 (2024); *see, e.g.*, *Hibbard v. Sec'y of Health & Hum. Servs.*, 698 F.3d 1355, 1366 (Fed. Cir. 2012); *Althen*, 418 F.3d at 1278.

[4] Petitioner has also alleged, in the alternative, a causation-in-fact claim. Am. Pet. at 5 (ECF 35). Petitioner's theory of causation was that the administration of his vaccines caused SIRVA, which in turn led to all the other symptoms that he experienced. Pet.'s Pre-Hearing Br. at 11–17 (ECF 47); Tr. at 32, 59–61 (ECF 59); Pet.'s Mot. at 7–9. Because that medical theory overlaps with some aspects of Petitioner's Table claim, and because I remand for additional development of the Table claim, I need

for those vaccines when experienced within 48 hours of vaccination. *See* 42 C.F.R. §§ 100.3(a)(VIII)(B), 100.3(a)(XIII)(B). The QAIs for SIRVA are as follows:

> SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. ... A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; ["QAI 1"]
>
> (ii) Pain occurs within the specified time-frame; ["QAI 2"]
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; ["QAI 3"] and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy). ["QAI 4"]

42 C.F.R. § 100.3(c)(10)(i)–(iv).

This Court may set aside a special master's conclusions as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 42 U.S.C. § 300aa-12(e)(2)(B). "Fact findings are reviewed ... under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). A special master must explain his reasoning thoroughly enough to enable meaningful review by the appellate court. *Goodwin v. Sec'y of Health & Hum. Servs.*, No. 19-503, 2024 WL 4758470, at \*1 (Fed. Cl. Oct. 10, 2024). When this Court finds error, it may either substitute its own findings and conclusions or remand for additional proceedings. 42 U.S.C. § 300aa-12(e)(2)(B)–(C).

## II.    Procedural and Factual History

Petitioner received the Hepatitis A and Hepatitis B vaccines, one in each shoulder, on April 30, 2018.[5] Pet.'s Ex. 1 at 1–2 (ECF 19-1); Entitlement Dec. at 2. Petitioner testified that he immediately felt both vaccinations were given "too high"

---

not reach Petitioner's off-Table theories. If the Chief Special Master wishes to provide further explanation of his resolution of the off-Table claim on remand, he may do so.

[5] Petitioner also received a vaccination against yellow fever on the same date, Pet.'s Ex. 1 at 1–3 (ECF 19-1), but that vaccination is not at issue in this case. Pet.'s Mot. at 1–2; Entitlement Dec. at 2.

in the shoulder. Entitlement Dec. at 5; *see* Tr. at 14 (ECF 59); Pet.'s Ex. 10 at 2 (ECF 32-2). He also testified that he developed pain and movement limitations in both shoulders within 48 hours. Tr. at 14–16; Entitlement Dec. at 5, 17.

The pain worsened during a period of international travel and began to spread down his arms, *see* Entitlement Dec. at 5, so Petitioner sought medical attention in June. *Id.* at 2; Pet.'s Ex. 2 at 24–27 (ECF 20-1).[6] At his appointment, Petitioner reported both pain and restricted movement, and placed the onset of pain at the time of the vaccination. Pet.'s Ex. 2 at 25; Entitlement Dec. at 2, 5, 17. His providers at the time suggested physical therapy, which he declined. Pet.'s Ex. 2 at 26; Pet.'s Ex. 3 at 3 (ECF 21-1); Entitlement Dec. at 2.[7]

He returned a month later, with continued shoulder pain and additional wrist and hand pain. Pet.'s Ex. 3 at 5; Entitlement Dec. at 2. Petitioner was diagnosed with carpal tunnel syndrome and wrist neuropathy. Pet.'s Ex. 2 at 37; Pet.'s Ex. 3 at 5, 7; Entitlement Dec. at 2–3.[8]

Petitioner's pain continued. In an August visit, he again complained of bilateral shoulder pain and hand swelling. Pet.'s Ex. 3 at 12–13; Entitlement Dec. at 3. The doctor suggested possible "reactive arthritis," and hypothesized that the carpal tunnel pain was secondary to possible vaccine-related swelling. Pet.'s Ex. 3 at 13; *see* Entitlement Dec. at 3. Subsequent treating physicians continued to note the potentially reactive nature of his swelling. Pet.'s Ex. 3 at 14, 20.

Petitioner underwent surgery for carpal tunnel syndrome in October and December 2018, Entitlement Dec. at 4, which he testified improved his symptoms. *Id.* at 6. He also began treatment with methotrexate, a rheumatic medicine. *Id.* at 4–5, 9; Pet.'s Ex. 2 at 135–36; Pet.'s Ex. 3 at 29–32.

By February 2020, Petitioner was experiencing only "intermittent soreness in his shoulders and some mildly decreased sensation in his left thumb, index and

---

[6] Most pages of Petitioner's Exhibit 2 contain three different sets of page numbering. *See, e.g.*, Pet.'s Ex. 2 at 24 (numbered as 18, 24, and 25). The Chief Special Master used the numbering stamped in red at the bottom of the exhibit page, rather than the pagination of the underlying document or the ECF pagination. For consistency and ease of reference, I do so as well throughout this opinion.
[7] As with Exhibit 2, I follow the Chief Special Master in using the exhibit pagination rather than the ECF pagination.
[8] The record is inconsistent as to whether Petitioner had carpal tunnel syndrome before his vaccination. The Chief Special Master considered it "undisputed that Petitioner had experienced [carpal tunnel syndrome] prior to vaccination." Entitlement Dec. at 18. But Petitioner in fact specifically denied that he had been treated for or diagnosed with carpal tunnel syndrome before vaccination. Tr. at 30; Entitlement Dec. at 6. Whatever the true facts of Petitioner's carpal tunnel syndrome might be, they do not appear to be "undisputed." Entitlement Dec. at 18. The Chief Special Master may revisit the issue on remand.

middle fingers that was stable." Entitlement Dec. at 5. According to Petitioner's hearing testimony, his only ongoing treatment is rheumatologic. *Id.* at 6; Tr. at 38. But although his shoulders have improved, he testified that he continued to experience pain as late as the hearing before the Chief Special Master in March 2024. Entitlement Dec. at 6; Tr. at 29–30.

The Chief Special Master considered the record and found that Petitioner had not demonstrated a Table SIRVA injury. Entitlement Dec. at 17–18. He determined that the first two QAIs were met because Petitioner had no relevant history of shoulder pain and the alleged injury occurred within 48 hours of vaccination. *Id.* at 17. But he found that Petitioner did not satisfy QAI 3 or QAI 4. *Id.* at 17–18.

The Petitioner argued, based on the medical record and expert testimony, that his carpal tunnel syndrome symptoms were caused by SIRVA-related inflammation.[9] Pet.'s Resp. to Resp.'s Pre-Hearing Mem. at 4–5 (ECF 51). But the Chief Special Master rejected that argument:

> However, other aspects of the record are inconsistent with a Table SIRVA. The largest deficiency with the claim is the fact that Petitioner eventually reported pain and other symptoms *not* characteristic of SIRVA, affecting his hands and wrists in particular. Indeed, these issues eventually predominated his treatment. Thus, by the late summer/early fall of 2018, Petitioner was predominantly receiving rheumatologic care for his complaints, and medications more specific to such treatment. The [carpal tunnel syndrome]-oriented surgical procedures he underwent are also wholly uncharacteristic of SIRVA. Thus, the record overall does not establish that Petitioner's complaints were shoulder-specific, even if *initially* they appeared to be. And an alternative explanation — reactive arthritis — was proposed by several treaters, and never ruled out, nor was SIRVA itself embraced as the most likely diagnostic explanation for what Petitioner experienced.

Entitlement Dec. at 17–18.

In addition to that relatively terse explanation, the Chief Special Master rejected Petitioner's claim that his shoulder pain was connected to his hand and wrist pain. *Id.* at 18. He found that "SIRVA and CTS are simply *unrelated* conditions," and credited the government's expert's view that SIRVA is "*highly* unlikely" to spread to

---

[9] The Petition also mentions a theory that Petitioner's vaccination aggravated pre-existing medical conditions. Am. Pet. at 5. But the Chief Special Master explained that Petitioner failed to formally develop that argument, Entitlement Dec. at 19 n.13, and Petitioner did not present an aggravation theory in his motion for review. I therefore agree with the Chief Special Master that to the extent Petitioner wished to present aggravation as grounds for recovery, he failed to preserve it. RCFC App. B, Rule 24.

a patient's wrists and hands. *Id.* He acknowledged the contrary view of Petitioner's expert, but found her unpersuasive and "lack[ing] a sufficient personal background in treating or studying *either* condition (let alone their relationship) to offer a reliable opinion on the topic." *Id.*

The Chief Special Master further explained that his conclusion remained the same "even if [he] ignored all the [carpal tunnel syndrome]-oriented treatment that the Petitioner received, and focused only on SIRVA-specific elements," *id.*, because the record as a whole did not show that any shoulder-specific pain persisted for the required six-months:

> Assuming that Petitioner's pain onset began the day of, or even one day after the April 30, 2018 vaccinations, the record does not show that his shoulder-specific concerns continued through the end of October 2018. On the contrary — by that time, his entire focus was on CTS, for which he was seeing a rheumatologist, Dr. Hagen. And his treatments were all aimed at remedying those symptoms. Thus, this case does not present circumstances common to SIRVAs, where a person either (in the worst case) undergoes arthroscopic surgery, obtains steroid shots to minimize pain, or otherwise engages in extensive physical therapy. This record does not establish that any initial pain Petitioner might have experienced due to vaccine misadministration was severe enough to meet the Act's foundational severity requirement.

*Id.*

## DISCUSSION

Petitioner argues mainly that the Chief Special Master failed to adequately consider the possibility that his shoulder and wrist pain were unrelated. Oral Arg. Tr. at 21 (ECF 71); *see* Pet.'s Mot. at 8. As Petitioner points out, QAI 3 and QAI 4 could be met even if a SIRVA patient coincidentally suffered unrelated carpal tunnel syndrome. *See Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2021 WL 4772097, at *8 (Fed. Cl. Sept. 9, 2021). Petitioner also argues that the Chief Special Master erred in finding the Vaccine Act's six-month severity requirement unmet. Pet.'s Mot. at 6. I agree that it is difficult to understand why the Chief Special Master considered those requirements unsatisfied in Petitioner's case, and so I remand for additional explanation.

### 1. The SIRVA QAIs

At the threshold, the government questions whether Petitioner has even preserved an argument that he experienced SIRVA unrelated to his other conditions. Resp.'s Br. at 11; Oral Arg. Tr. at 51. Petitioner does appear to have focused his argument before the Chief Special Master on the theory that all his pain was

connected to the vaccines.[10] But there is no question that Petitioner alleged a SIRVA injury, Am. Pet. at 2; *see also* 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), even if the scope of the symptoms attributable to that injury is in dispute. The Chief Special Master accordingly considered the possibility that Petitioner's shoulder pain could be analyzed as distinct from his hand and wrist pain. Entitlement Dec. at 18. That is enough to present the issue for this Court's review. *See Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1364 n.2 (Fed. Cir. 2014) (explaining that once the lower court "recognized, considered, and ruled on the issue," the argument was not forfeited on appeal) (citing *Hollmer v. Harari*, 681 F.3d 1351, 1356 n.3 (Fed. Cir. 2012) (in turn citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995))). I may therefore review the Chief Special Master's conclusion that Petitioner failed to show that his shoulder pain, considered in isolation, constituted a SIRVA Table injury.

The main problem with the Entitlement Decision is that it does not explain the Chief Special Master's reasoning in enough detail for my review. The essential reasoning appears in a single paragraph (reproduced above) making two points about Petitioner's treatment: (1) his treatments were ultimately rheumatologic and carpal tunnel–related, and (2) during the course of his treatment, the alternative explanation of "reactive arthritis" was "never ruled out" while SIRVA was not "embraced as the most likely diagnostic explanation." Entitlement Dec. at 17–18. But it does not follow from either of those points that QAI 3 and QAI 4 are unmet.

As for QAI 3, Petitioner was obligated to show "[p]ain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered[.]" 42 C.F.R. § 100.3(c)(10)(iii). As mentioned, though, there is no dispute that a petitioner can satisfy QAI 3 even if he is treated for other pain, elsewhere in his body, caused by some other condition. *Rodgers*, 2021 WL 4772097, at *8. Given the acknowledged possibility that Petitioner's shoulder pain appeared coincidentally with other conditions, the Entitlement Decision should have considered whether some of the pain was shoulder-specific.

As for QAI 4, the question is whether any "other condition or abnormality is present that would explain the patient's symptoms[.]" 42 C.F.R. § 100.3(c)(10)(iv); *see, e.g.*, *Lang v. Sec'y of Health & Hum. Servs.*, No. 17-995V, 2020 WL 7873272, at *12–13 (Fed. Cl. Dec. 11, 2020). That requires consideration of a petitioner's medical

---

[10] The Chief Special Master, as mentioned, rejected that theory based mainly on his findings that SIRVA is distinct from Petitioner's other conditions and that the government's expert was more credible than Petitioner's. Entitlement Dec. at 18. Petitioner has presented little if any contrary argument, and so has not shown that the Chief Special Master's conclusion was arbitrary or capricious. But even that part of the Entitlement Decision distinguishes Petitioner's carpal tunnel syndrome from his "SIRVA-like symptoms," *id.*, and so underscores that shoulder-specific concerns should be analyzed as such even if other concerns are set aside.

condition as a whole. *See, e.g., Durham v. Sec'y of Health & Hum. Servs.*, No. 17-1899V, 2023 WL 3196229, at \*14 (Fed. Cl. May 2, 2023). Although the Entitlement Decision mentions the possibility of reactive arthritis, it does not actually conclude that reactive arthritis is "present," nor that it would "explain" Petitioner's symptoms as a whole — only that it was not "ruled out." Entitlement Dec. at 18; *see* 42 C.F.R. § 100.3(c)(10)(iv). Finding that an alternative explanation for Petitioner's condition is *possible* does not respond to the terms of the QAI and thus cannot be enough to find that the Table criteria are unmet.

To be clear, I do not find that the Chief Special Master was wrong on the facts or that Petitioner has a Table injury. The point, rather, is that to survive arbitrary and capricious review, "a decision-maker must 'provide a reasoned explanation for [his] action.'" *Goodwin*, 2024 WL 4758470, at \*3 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 35 (2020)). That requires not only that the decision maker "consider[] the relevant evidence of record [and] draw[] plausible inferences," but that the decision maker "articulate[] a rational basis for the decision." *Hines ex rel. Sevier v. Sec'y of Dep't of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). Where a special master's decision does not articulate an explanation that logically connects specific facts to the terms of the Table, there is not enough for this Court's review, and remand is appropriate. *McClendon v. Sec'y of Dep't of Health & Hum. Servs.*, 23 Cl. Ct. 191, 196–97 (1991); *see also Goodwin*, 2024 WL 4758470 at \*2 (quoting *Dixon v. Sec'y of Health & Hum. Servs.*, 61 Fed. Cl. 1, 8 (2004) (itself quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).

## 2. *The Six-Month Severity Requirement*

The Chief Special Master concluded in the alternative that "even if [he] ignored all the [carpal tunnel syndrome]-oriented treatment the Petitioner received, and focused only on SIRVA-specific elements," Petitioner did not satisfy the Vaccine Act's six-month severity requirement. Entitlement Dec. at 18. I remand for reconsideration of that conclusion as well.

The Chief Special Master found that "the record does not show that [Petitioner's] shoulder-specific concerns continued through the end of October 2018," six months after the vaccination. Entitlement Dec. at 18. Findings of fact by special masters are reviewed with great deference. *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011); *Munn*, 970 F.2d at 870. But the Chief Special Master's specific factual findings conflict with that conclusion. Petitioner in fact testified that he experienced intermittent pain as late as the 2024 hearing in this case. *See* Tr. at 29–30; Entitlement Dec. at 6. The Entitlement Decision never says

that Petitioner was not credible in that regard. That makes it hard to understand a finding that, even "focus[ing] only on SIRVA-specific elements" of Petitioner's claim, "his shoulder-specific concerns" were over by the fall of 2018. Entitlement Dec. at 18.

It is possible that the Chief Special Master meant that Petitioner's pain was not intense enough to satisfy the severity requirement. *See id.* (concluding that the record "does not establish that any initial pain Petitioner might have experienced due to vaccine misadministration was severe enough to meet the Act's foundational severity requirement"). But that would have been a legal error. The Vaccine Act's severity requirement goes only to the *persistence* of pain, not its intensity, and is met so long as Petitioner can show that he "suffered the residual effects or complications of [the alleged injury] for more than 6 months after the administration of the vaccine[.]" 42 U.S.C. § 300aa-11(c)(1)(D)(i); *see Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022); *Wagner v. Sec'y of Health & Hum. Servs.*, No. 17-1388V, 2019 WL 3297509, at *5 (Fed. Cl. May 8, 2019); *see also* Oral Arg. Tr. at 40. If Petitioner's shoulder-specific symptoms lasted more than six months, the severity requirement would be met even if the symptoms did not require ongoing medical treatment.

I do not find that Petitioner met the severity requirement. Rather, because the Entitlement Decision's conclusion about the severity of Petitioner's injury rests on an unexplained finding that could rest in turn on factual or legal error, I remand for additional consideration.

## CONCLUSION

For the foregoing reasons, the Petitioner's motion for review (ECF 61) is **GRANTED** and the Entitlement Decision (ECF 60) is **VACATED**. The case is **REMANDED** to the Chief Special Master. The Chief Special Master shall issue a new entitlement decision within **ninety days** of this decision. *See* 42 U.S.C. § 300aa-12(e)(2)(C); RCFC App. B, Rule 28(b).

Respondent's motion to strike (ECF 66) Petitioner's Supplemental Motion (ECF 65) is **GRANTED** for the reasons stated on the record at the hearing. Oral Arg. Tr. at 4–6.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge